UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                                                        :

CANON INC.,                                      :

                         Plaintiff,              :           **REPORT AND**
                                       :           **RECOMMENDATION**

              -against-              :
                                       :           21-CV-1227 (KAM)(PK)

XIANSHI YANLIANGQU              :
CANQIUBAIHUODIANSHANGHANG,    :

                       Defendant.            :
------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

Canon Inc. ("Plaintiff" or "Canon") brought this action against Xianshi yanliangqu canqiubaihuodianshanghang ("Defendant" or "CJ-us") pursuant to "the patent laws of the United States, Title 35 of the United States Code," alleging infringement of its patents relating to toner supply containers. (*See* Compl. ¶¶ 6, 24-27, Dkt. 1.) Before the undersigned on referral from the Honorable Kiyo A. Matsumoto is Plaintiff's Motion for Default Judgment and Permanent Injunction. ("Motion," Dkt. 14.) For the reasons stated below, the undersigned respectfully recommends that the Motion be GRANTED and that Defendant be permanently enjoined from further infringing on Plaintiff's protected patents.

## BACKGROUND

The following facts are taken from the Complaint and the Declarations of Akira Domon dated Oct. 22, 2021 ("Domon Decl.," Dkt. 14-2), Richard A. Lux, Ph.D. dated Oct. 21, 2021 ("Lux Decl.," Dkt. 14-4), and Andrew J. Kutas dated Oct. 22, 2021 ("Kutas Decl.," Dkt. 14-20). Defendant has not refuted any of the facts and they are accepted as true for purposes of the Motion. *See Finkel v.*

*Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (in light of defendant's default, a court is required to accept all of plaintiff's factual allegations as true and draw all reasonable inferences in its favor).

**I.       Factual Background**

Plaintiff Canon is a Japanese corporation with its principal place of business in Tokyo, Japan. (Compl. ¶ 2.) Plaintiff manufacturers and sells copy machines, laser beam printers, inkjet printers, and other consumer, business, and industrial products. (*Id.* ¶ 3.) Among these products are toner supply containers which are used to contain and discharge toner in Canon copy machines. (Domon Decl. ¶¶ 11-13.) Plaintiff is the sole owner by assignment of the entire right to, title to, and interest in thirteen different United States patents ("Asserted Patents") relating to toner supply containers. (Compl. ¶¶ 9-23.) The Asserted Patents were issued to Plaintiff between October 22, 2013 and December 31, 2019 and are valid and enforceable. (*Id.*) Patents No. 8,565,649 ("the '649 patent"), No. 9,354,551 ("the '551 patent"), and No. 9,753,402 ("the '402 patent") "describe a pumping mechanism that allows toner contained in the supply container to be properly fed and discharged, without the need for the copy machine to have a dedicated driving source for operating the pump." (Domon Decl. ¶ 11.) The remaining patents—No. 10,209,667 ("the '667 patent"), No. 10,289,060 ("the '060 patent"), No. 10,289,061 ("the '061 patent"), No. 10,295,957 ("the '957 patent"), No. 10,488,814 ("the '814 patent"), No. 10,496,032 ("the '032 patent"), No. 10,496,033 ("the '033 patent"), No. 10,514,654 ("the '654 patent"), No. 10,520,881 ("the '881 patent"), and No. 10,520,882 ("the '882 patent")—"describe a track that facilitates easy installation and removal of the toner supply container by a user, while avoiding toner spillage both inside and outside of the copy machine." (*Id.*)

Defendant is a Chinese entity with its principal place of business located at "Yanliangqu XinhualujiedaobanbeizhushichangX-572, Xianshi, Shanxisheng, China 710089." (Compl. ¶ 4.) Through its "CJ-us" storefront on Amazon.com, Defendant is engaged in the business of selling

and/or offering to sell in the United States, and/or importing into the United States toner supply containers for use in Canon copy machines.  (*Id.* ¶¶ 5, 24, 27.)

Defendant sold at least the following four toner supply containers (collectively, the "Accused Products"), which infringe the Asserted Patents: GPR58K, GPR58C, GPR58M, and GPR58Y.  (*Id.* ¶ 25.)

For each Asserted Patent, the Complaint states that "Defendant has directly infringed and is directly infringing [the Asserted Patent] by selling and/or offering to sell within the United States and/or importing into the United States Accused Products embodying the invention defined by one or more claims of [the Asserted Patent], without authority of Canon"; the Complaint also sets forth the particular claims of each patent that Defendant's sale, offer to sell and importation of the Accused Products infringe.  (*Id.* ¶¶ 29, 37, 45, 53, 61, 69, 77, 85, 93, 101, 109, 117, 125.)[1]

Defendant sells the Accused Products "for use in certain Canon imageRUNNER® copy machines as purported alternatives to Canon toner supply containers." (Domon Decl. ¶ 16.)  The online product description for the Accused Products lists the Canon copy machines with which they are compatible and the Canon toner supply container they are intended to replace; in addition, the packaging for the Accused Products lists the Canon copy machines with which they are compatible. (*Id.*; *see* Ex. A to Domon Decl. (Canon investigator's purchase documentation); Ex. 2 to Lux Decl. (photographs of all Accused Products).)  The Accused Products are identical to one another in structure and differ only in the color of the toner each contains.  (Lux Decl. ¶¶ 74, 76, 88.)  The following chart shows the Canon product which each Accused Product purports to replace.

---

[1] For each Asserted Patent, the Complaint also alleges indirect infringement (Compl. ¶¶ 30, 38, 46, 54, 62, 70, 78, 86, 94, 102, 110, 118, 126), but because Plaintiff does not assert these claims in the Motion, *see* Plaintiff's Memorandum of Law in Support at 6-7, Dkt. 14-1, only direct infringement will be considered.

| Accused Products | Corresponding Canon Products |
|---|---|
| GPR58K | GPR-58 (Black) |
| GPR58C | GPR-58 (Cyan) |
| GPR58M | GPR-58 (Magenta) |
| GPR58Y | GPR-58 (Yellow) |

(Domon Decl. ¶ 16.)

On December 13, 2020, Plaintiff's investigator purchased the Accused Products from Defendant through the "CJ-us" storefront on Amazon.com, with delivery to an address located in Brooklyn, New York. (*Id.*; *see* Ex. A to Domon Decl.)

## II.     Procedural History

Plaintiff filed the Complaint on March 8, 2021. (Dkt. 1.) Plaintiff concurrently brought an action in the U.S. International Trade Commission ("ITC Action"), naming Defendant (among other respondents) and alleging infringement of the Asserted Patents by the Accused Products. (*Id.* ¶ 1.)

After attempted service of the complaint for the ITC Action to the address provided on Defendant's Amazon.com seller profile page failed because the address "could not be located" as it "appears to be incomplete insofar as the street address is truncated," Plaintiff requested alternative service of process pursuant to Fed. R. Civ. P. 4(f)(3) and 4(h). (Plaintiff Canon Inc.'s *Ex Parte* Application for Alternative Service of Process via Amazon.com ("Pl. Req. for Alt. Service") at 2, Dkt. 6.) On July 29, 2021, the Court granted Plaintiff's motion, finding that the proposed alternative means of service—through the Amazon.com messaging service by using the contact link on Defendant's seller profile page—was reasonably calculated to reach Defendant and consistent with due process. (Order on Motion for Alternative Service of Process ("Alt. Service Order") at 5, Dkt. 9.)

On August 16, 2021, Plaintiff served Defendant with the Summons and Complaint by sending it a message via Amazon.com's messaging system at the "CJ-us" storefront, consisting of text in the message body informing Defendant of the lawsuit and a link to download the Summons and

4

Complaint; the message also attached a file containing a PDF version of the Summons and Complaint. (Declaration of Dennis J. McMahon in Support of Proof of Service dated August 17, 2021 ("McMahon Decl.") ¶¶ 3-5, Dkt. 10-1; *see* Exs. A and B to McMahon Decl.)

Defendant did not file an answer or otherwise respond to the Complaint. Plaintiff requested a Certificate of Default on September 8, 2021 (Dkt. 11), and the Clerk of Court entered default against Defendant on September 16, 2021 (Dkt. 12). On October 22, 2021, Plaintiff filed the Motion (Dkt. 14), which was referred to the undersigned for a Report and Recommendation (Order dated Apr. 4, 2022).

## DISCUSSION

### I. Default Judgment Standard

Federal Rule of Civil Procedure 55 governs the procedure that applies in cases where there is a default during the course of litigation. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). It provides "a 'two-step process' for the entry of judgment against a party who fails to defend …." *Id.* (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ. P. 55(a). Then, the plaintiff must "apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

Failure to answer may constitute a default, as may failure to defend at later stages of litigation. *See* Fed. R. Civ. P. 55. Here, Defendant did not file an answer to the Complaint.

"A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true." *United States v. Myers*, 236 F. Supp. 3d 702, 706 (E.D.N.Y. 2017) (collecting cases). A court must draw all reasonable inferences in the moving party's favor. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty*

*Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). A court must ensure that (1) jurisdictional requirements are satisfied, *see Mickalis*, 645 F.3d at 125-27, 133; (2) the plaintiff took all the required procedural steps in moving for default judgment, *see* Local Civil Rule 55.2; and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter of law, *see Finkel*, 577 F.3d at 84.

A court exercises significant discretion in deciding whether to grant a default judgment, including whether the grounds for default are clearly established, and the applicable damages. *See Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *GuideOne Specialty Mut. Ins. Co.*, 696 F. Supp. 2d at 208.

## II. Jurisdictional Requirements

A court from which default judgment is sought must assure itself that it has subject matter jurisdiction over the action. *See Mickalis*, 645 F.3d at 125-26 (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)). The Court has subject matter jurisdiction over this patent infringement action under United States Code Title 35, pursuant to 28 U.S.C. §§ 1331 and 1338(a).

For an entry of default judgment by the Court, a plaintiff must serve the defendant properly with the Summons and Complaint. *See Advanced Capital Commercial Grp., Inc v. Suarez*, No. 09-CV-5558 (DRH)(GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept 20, 2013). Plaintiff served Defendant by alternative service as authorized by the Court. (*See* Proof of Service, Dkt. 10; Alt. Service Order at 5.) Plaintiff received confirmation through the Amazon.com messaging service that its message to Defendant was sent, and it did not receive a message that the attachment containing the Summons and Complaint was not sent, thus indicating that both the message and attachment were successfully sent to Defendant. (McMahon Decl. ¶¶ 4, 6-7.) Therefore, Plaintiff's service was proper. *See* Fed. R. Civ. P. 4(f)(3) and 4(h).

Before entering a default judgment, a court may, but need not, inquire as to whether it has personal jurisdiction over a defaulting defendant. *See Mickalis*, 645 F.3d at 133 (citing *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 & n.7 (2d Cir. 2010)). In addition to proper service of process on the defendant, the exercise of personal jurisdiction by a court requires a statutory basis for personal jurisdiction that renders the service effective and must comply with due process. *See Licci ex rel. Licci v. Lebanese Canadian Bank*, 673 F.3d 50, 59-60 (2d Cir. 2012).

To determine whether there is a statutory basis for personal jurisdiction over a foreign defendant, a court looks to the forum state's long-arm statute. *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). New York's long-arm statute provides in relevant part that "a court may exercise personal jurisdiction over any non-domiciliary … who in person or through an agent … transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. 302(a)(1). Section 302 "is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Queen Bee of Beverly Hills*, 616 F.3d at 170 (quoting *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (N.Y. 1988)).

Defendant's activities were purposeful. A foreign corporation's offer to ship products to New York through Amazon.com and its actual shipment of infringing products into New York satisfy the requirements of New York's long-arm statute. *See Evriholder Prods. LLC v. Simply LBS Ltd. Co.*, No. 17-CV-4329 (RA)(BCM), 2020 WL 7060336, at *4 (S.D.N.Y. Apr. 21, 2020). Defendant offers to sell and sells the Accused Products within this District through its "CJ-us" storefront on Amazon.com. (Compl. ¶ 27.) Plaintiff purchased the Accused Products from Defendant and provided a copy of the order confirmation and photographs of shipping labels showing that the Accused Products were shipped to a Brooklyn, New York address. (*See* Domon Decl. ¶ 16; Ex. A to Domon Decl.)

Furthermore, there is a substantial relationship between this transaction and Plaintiff's claims of patent infringement.

Once the statutory basis for personal jurisdiction is established by a party's conduct, it would be a "rare" case if the court's exercise of personal jurisdiction did not comport with constitutional due process. *Evriholder Prods.*, 2020 WL 7060336, at *3 (quoting *Licci ex rel. Licci*, 732 F.3d at 170). Defendant has sufficient "minimum contacts" with New York, this action arises from those contacts, and New York has an "interest in adjudicating potential patent infringement that occurs within this forum." *Id.* at *4 (quoting *Multiwave Sensor Inc. v. Sunsight Instruments, LLC*, No. 1:16-cv-1361-GHW, 2017 WL 1498058, at *6 (S.D.N.Y. Apr. 26, 2017)).

Therefore, this Court has personal jurisdiction over Defendant.

### III. Procedural Compliance with Local Civil Rules 7.1 and 55.2

A plaintiff must ensure that its "motion [for default judgment] adheres to certain local and individual rules." *Bhagwat v. Queens Carpet Mall, Inc.*, No. 14-CV-5474, 2015 WL 13738456, at *1 (E.D.N.Y. Nov. 24, 2015). As part of its Motion and in compliance with the Local Civil Rules, Plaintiff included a Notice of Motion (Dkt. 14), *see* Local Civil Rule 7.1(a)(1); a Memorandum of Law ("Pl. Mem.," Dkt. 14-1), *see* Local Civil Rule 7.1(a)(2); supporting declarations and exhibits (Dkts. 14-2 to 14-25), *see* Local Civil Rule 7.1(a)(3); the Clerk's Certificate of Default (Dkt. 14-22), *see* Local Civil Rule 55.2(b)(1); a copy of the Complaint (Dkt. 14-21), *see* Local Civil Rule 55.2(b)(2); and a proposed form of default judgment (Dkt. 14-26), *see* Local Civil Rule 55.2(b)(3).

Local Civil Rule 55.2(c) requires all motion papers to be mailed to a corporation at "its last known business address." As discussed above, Defendant's only known business address could not be located, and the Court found that Plaintiff's proposed alternative means of service via the contact link on Defendant's Amazon.com seller profile page was both reasonably calculated to reach Defendant and consistent with due process. (Alt. Service Order at 4, 5.) Plaintiff served the Motion

8

on Defendant through the same means as authorized by the Court for service of the Summons and Complaint. (Proof of Service, Dkt. 15.) Therefore, the mailing requirement of Local Civil Rule 55.2(c) is satisfied.

Accordingly, Plaintiff has complied with the procedural requirements for default judgment.

### IV. Liability for Direct Infringement Under the Patent Act

The Patent Act provides in relevant part that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a).

To state a claim for patent infringement, a plaintiff must "(i) allege ownership of the patent, (ii) name each defendant, (iii) cite the patent that is allegedly infringed, (iv) state the means by which the defendant allegedly infringes, and (v) point to the sections of the patent law invoked." *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1362 (Fed. Cir. 2013) (citing *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000)); *accord Display Techs., LLC v. Leantegra, Inc.*, No. 20-CV-7816 (LJL), 2022 WL 354667, at *3 (S.D.N.Y. Feb. 7, 2022); *Brydge Techs. LLC v. OGadget LLC*, No. 19-CV-5692 (EK)(CLP), 2021 WL 1200316, at *3 (E.D.N.Y. Mar. 4, 2021), *R&R adopted*, 2021 WL 1193003 (E.D.N.Y. Mar. 30, 2021).

Plaintiff alleges that it is "the sole owner of the entire right, title, and interest in and to" the Asserted Patents. (Compl. ¶ 22.) It names Defendant as the sole defendant. (*Id.* ¶¶ 4, 5.) It cites each Asserted Patent allegedly infringed, by registration number and issue date. (*Id.* ¶¶ 9-23.) It describes how Defendant, through its "CJ-us" storefront on Amazon.com and without Plaintiff's authority, infringes on the Asserted Patents by "selling and/or offering to sell within the United States and/or importing into the United States toner supply containers … for use in one or more Canon copy machines …, which toner supply containers are covered by one or more claims of each of the Asserted Patents." (*Id.* ¶¶ 24, 27.) It also specifies four Accused Products. (*Id.* ¶ 25.)

9

With regard to whether Plaintiff has "point[ed] to the sections of the patent law invoked," *Hall*, 705 F.3d at 1362, Plaintiff argues in the Motion that the Complaint "sufficiently states a claim … under 35 U.S.C. § 271(a)." (Pl. Mem. at 6.) While the Complaint itself makes no specific mention of Section 271(a), citing only "Title 35 of the United States Code" generally (Compl. ¶ 6), the language of each cause of action covering each Asserted Patent tracks the language of the statute and states that Plaintiff is asserting direct infringement: "Defendant has directly infringed and is directly infringing the [Asserted Patents] by selling and/or offering to sell within the United States and/or importing into the United States Accused Products embodying the invention defined by one or more claims of the [Asserted Patents], without authority of [Plaintiff]." (*See, e.g.*, *id.* ¶ 29.) Because Plaintiff "stated the correct law," *Hall*, 705 F.3d at 1364, the pleading is sufficient to "point to" 35 U.S.C. § 271(a) and gives Defendant adequate notice of the specific section of the patent law invoked. *See Phonometrics*, 203 F.3d at 794 (finding complaint alleging patent infringement "contains enough detail to allow the defendants to answer").

Plaintiff's well-pleaded allegations, which the Court must accept as true, are sufficient to establish Defendant's liability for patent infringement, and I respectfully recommend that Defendant be found liable for direct patent infringement pursuant to 35 U.S.C. § 271(a).[2] *See, e.g.*, *Display Techs.*, 2022 WL 354667, at *3-4; *Evriholder Prods.*, 2020 WL 7060336, at *4-5.

---

[2] Although not necessary for the Motion, Plaintiff also submitted thirteen claim charts detailing how CJ-us GPR58K—which is "substantially the same in all relevant respects as the Accused [Products]" and "representative of" those other toner supply containers—"literally meets all of the limitations of each Asserted Claim" of each of the thirteen Asserted Patents. (*See* Lux Decl. ¶¶ 88-90; Appendices 1-13 to Lux Decl.) The Court need not consider this additional evidence or consider Plaintiff's additional arguments regarding claim construction. (*See* Pl. Mem. at 7-17.) *See Phonometrics,* 203 F.3d at 794 (inclusion of "each element of the claims of the asserted patent" not necessary to allege patent infringement); *see, e.g.*, *Display Techs.*, 2022 WL 354667, at *4 (finding Section 271(a) liability on default judgment based only on Federal Circuit's "five elements required to establish … liability for patent infringement"); *Brydge Techs.*, 2021 WL 1200316, at *3-4 (same); *Evriholder Prods.*, 2020 WL 7060336, at *4-5 (same).

## V. Request for Permanent Injunction Under 35 U.S.C. § 283

The Patent Act empowers a court to "grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. A plaintiff seeking a permanent injunction under the Patent Act must show

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

### A. *Irreparable Injury*

The first prong of the *eBay* test "requires the Court to consider whether the plaintiff has suffered an irreparable injury as a result of the defendants' infringement." *Metso Minerals, Inc. v. Powerscreen Int'l Distribution Ltd.*, 788 F. Supp. 2d 71, 74 (E.D.N.Y. 2011). In considering whether there is irreparable injury, courts "look to the business effects of the infringement." *Id.* Irreparable injury can exist when a plaintiff shows that infringement "caused a loss of value in its business that is difficult to quantify—such as market share, goodwill, or reputation …." *Id.* (citing *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011); *Verizon Services Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1310 (Fed. Cir. 2007)).

Here, Plaintiff shows that Defendant's infringement caused and will cause Plaintiff's loss of market share, goodwill, and reputation. The Accused Products are sold as substitutes for toner supply containers made by Canon, which manufactures the copy machines in which they are used (and is sometimes referred to as an "original equipment manufacturer" or "OEM"). (Pl. Mem. at 21 (citing Domon Decl. ¶¶ 16-17).) Indeed, the description on the Amazon.com marketplace website specifically references the Canon product which the Accused Products are intended to replace. (Ex.

A to Domon Decl.) Once a customer purchases or uses a "non-OEM" toner supply container, such as the Accused Products, the customer will often continue to purchase or use such toner supply containers. (Domon Decl. ¶ 19.) Additionally, once a customer purchases or uses non-OEM toner supply containers for one type of copy machine, the customer is likely to purchase or use such toner supply containers for other types of copy machines. (*Id.*) Because customers who purchase Defendant's Accused Products could have bought OEM toner supply containers made by Plaintiff, Plaintiff and Defendant "were competing for the same customers in the same markets." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012). "Direct competition is a factor which 'strongly' suggests the potential for irreparable harm." *Brydge Techs.*, 2021 WL 1200316, at *6 (quoting *Presidio Components*, 702 F.3d at 1363).

Plaintiff also shows that Defendant's infringement has caused a loss of goodwill and injury to its reputation. Non-OEM toner supply containers such as the Accused Products "have been known to be of lower quality than the OEM toner supply containers," and, therefore, users of the Accused Products "might face the risk of encountering poorer performance and increased maintenance problems," which could lead to distrust toward the reliability of Plaintiff's copy machines. (Domon Decl. ¶ 20.)

Accordingly, Plaintiff has shown that Defendant's infringement has caused it irreparable harm.

      B.    *Inadequate Remedy at Law*

"The second *eBay* factor is whether 'remedies available at law, such as monetary damages, are inadequate to compensate' for the irreparable harm suffered by the patentee." *Apple Inc. v. Samsung Electronics Co., Ltd.*, 809 F.3d 633, 644-45 (Fed. Cir. 2015) (quoting *eBay*, 547 U.S. at 391).

The loss of market share, goodwill, and reputational harm to Plaintiff as a result of Defendant's infringement is difficult to quantify. Plaintiff contends that if Defendant's infringement is left

unchecked, other would-be infringers will be incentivized to enter the market, and demand for Plaintiff's OEM toner supply containers will decline further. (Domon Decl. ¶ 24.) This contention is unrebutted. In addition, Plaintiff stands to lose sales not only of its OEM toner supply containers, but also of its copy machines if the inferior quality of the Accused Products causes customers to lose trust in Plaintiff's copy machines. (*Id.* ¶ 20.) This effect on "downstream sales" is especially difficult to quantify. *See Apple*, 809 F.3d at 645.

Accordingly, Plaintiff has shown that monetary damages will not adequately compensate it for the irreparable harm caused by Defendant's infringement. *See Kaneka Corp. v. Purestar Chem Enter. Co.*, No. 16-CV-4861, 2018 WL 3215680, at *4 (E.D.N.Y. May 1, 2018), *R&R adopted*, 2018 WL 3213281 (E.D.N.Y. June 29, 2018) (A "showing that infringement caused a difficult to quantify loss of value in [the plaintiff's] business—such as market share, goodwill, or reputation—is likely to establish [both] irreparable injury and the inadequacy of money damages.")

    C.    *Balance of Hardships*

The third prong of the *eBay* test requires a court to "assess the relative effect of granting or denying an injunction on the parties." *Apple*, 809 F.3d at 645 (quoting *i4i Ltd. P'ship*, 598 F.3d at 862). "The balance of hardships clearly tips in plaintiff's favor where it has established irreparable harm, shown that the infringing conduct is likely to continue absent injunctive relief, and plaintiff has already incurred substantial legal costs in protecting its rights." *Brydge Techs*, 2021 WL 1200316, at *7 (cleaned up) (quoting *Hilton v. Int'l Perfume Palace Inc.*, No. 12-CV-5074 (JFB)(GRB), 2013 WL 5676582, at *13 (E.D.N.Y. Oct. 17, 2013)).

"Where the defendant defaults," as here, "[a] court may infer … that [defendant] is willing to, or may continue its infringement" absent injunctive relief. *Sexy Hair Concepts, LLC v. Sexy Hair Inc.*, No. 12-CV-3937 (ARR)(MDG), 2013 WL 5460629, at *4 (E.D.N.Y. Sept. 30, 2013) (alterations in original) (citations omitted); *see also Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946

(JS)(AKT), 2015 WL 1299259, at *18 (E.D.N.Y. Mar. 23, 2015). In addition, Plaintiff has already secured consent judgments and permanent injunctions in lawsuits involving most or all of the Asserted Patents from at least ten other alleged infringers—likely incurring substantial litigation costs in doing so. (*See* Pl. Mem. at 25; Domon Decl. ¶ 14 (listing 22 district court actions and two International Trade Commission investigations).)

Any hardships faced by Defendant due to a permanent injunction would be slight in comparison to the burdens on Plaintiff. Defendant appears to sell over one thousand items on Amazon.com (*see* Kutas Decl. ¶ 7; Ex. E to Kutas Decl.), such that its survival is not likely to be threatened if it is prohibited from selling the Accused Products (*see* Pl. Mem. at 26).

The balance of the hardships, thus, weighs in Plaintiff's favor.

D. *Public Interest*

The fourth eBay factor requires a patentee to show that "the public interest would not be disserved by a permanent injunction." *Apple*, 809 F.3d at 646 (quoting *eBay*, 547 U.S. at 391). "In patent infringement cases, there is a 'strong public policy favoring the enforcement of patent rights.'" *Kaneka*, 2018 WL 3215680, at *5 (quoting *PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1567 (Fed. Cir. 1996)). "[T]he public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices [its] inventions." *Apple*, 809 F.3d at 647. "The touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public from the injunction's adverse effects." *Kaneka*, 2018 WL 3215680, at *5 (alteration omitted) (quoting *i4i Ltd. P'ship*, 598 F.3d at 863).

Here, the public would not be harmed by any decrease in available toner supply containers on the market. While competition in the marketplace is good, "the public generally does not benefit when that competition comes at the expense of a patentee's investment-backed property right." *Apple*,

14

809 F.3d at 647. Plaintiff also states that it is ready and able to meet any supply shortage created by a permanent injunction prohibiting Defendant from selling or importing the Accused Products. (*See* Pl. Mem. at 27; Domon Decl. ¶ 26.) This mitigates any adverse effects a permanent injunction may have on the public while protecting Plaintiff's rights. *See Kaneka*, 2018 WL 3215680, at *5 (injunctive relief serves the public interest where "any adverse impact is limited to restraining … infringing activity and vindicating … patent rights").

Accordingly, Plaintiff has established its entitlement to a permanent injunction, and I respectfully recommend that it be granted.[3]

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that the Motion for Default Judgment and Permanent Injunction be GRANTED, and that Defendant be permanently enjoined from further infringing Plaintiff's protected patents as follows:

Effective as of the date default judgment is entered and continuing until the expiration of the last to expire of the Asserted Patents (*i.e.*, U.S. Patent Nos. 8,565,649 ("the '649 patent"); 9,354,551 ("the '551 patent"); 9,753,402 ("the '402 patent"); 10,209,667 ("the '667 patent"); 10,289,060 ("the '060 patent"); 10,289,061 ("the '061 patent"); 10,295,957 ("the '957 patent"); 10,488,814 ("the '814 patent"); 10,496,032 ("the '032 patent"); 10,496,033 ("the '033 patent"); 10,514,654 ("the '654 patent"); 10,520,881 ("the '881 patent"); and 10,520,882 ("the '882 patent")), Defendant is permanently enjoined from selling, or offering for sale in the United States, or importing into the United States, (i) any of the Accused Products (*i.e.*, toner supply containers bearing the designations

---

[3] Although the Complaint also sought compensatory damages pursuant to 35 U.S.C. § 284, and costs (*see* Compl. at 25 (*ad damnum* clauses C and D)), the Motion only seeks a permanent injunction. (*See* Proposed Default Judgment and Permanent Injunction at 1, Dkt. 14-26.) Accordingly, the other requests for relief are not considered here.

15

GPR58K, GPR48C, GPR58M, and GPR58Y), or (ii) any other toner supply container that infringes on the Asserted Patents.

Plaintiff is directed to serve this Report and Recommendation on Defendant and file proof of service on the docket by **August 16, 2022**.

Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any such objection waives the right to further judicial review of this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated: August 12, 2022
Brooklyn, New York

16